IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**DANIEL ADAM BARNES v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Cheatham County**
**No. 16551       Larry Wallace, Judge**

_____

**No. M2016-00178-CCA-R3-PC – Filed February 24, 2017**

_____

The Petitioner, Daniel Adam Barnes, filed in the Cheatham County Circuit Court a petition for post-conviction relief from his conviction of violating Tennessee Code Annotated section 39-13-111 and the accompanying sentence of eleven months and twenty-nine days. The Petitioner alleged that his counsel was ineffective by failing to challenge the sufficiency of the evidence on direct appeal. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Dora L. Salinas (on appeal) and M. David Perez (at trial), Ashland City, Tennessee, for the Appellant, Daniel Adam Barnes.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Wendall Ray Crouch, Jr., District Attorney General; and Robert S. Wilson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Petitioner was charged with domestic assault, and he agreed to a bench trial. On direct appeal, this court stated that the Petitioner's domestic assault conviction

arose from events that occurred on or near the Cheatham County Courthouse square on August 28, 2011. The [Petitioner] had been formerly married to Chelsea Barnes, and the union produced a daughter who was two years of age in August 2011. The victim is the father of Chelsea Barnes and the grandfather of the Barnes's child. Pursuant to civil proceedings, the parties effected the visitation exchange of the child by meeting at the courthouse where, typically, Chelsea Barnes would arrange for the exchange to be observed by an Ashland City police officer.

On August 28, 2011, the parties arrived at the courthouse for the [Petitioner] to return the child to Ms. Barnes. No police officer was in observance, but the victim along with some of his friends with whom he had been riding motorcycles that day attended the exchange.

The victim testified that when the [Petitioner] made a disparaging remark about Ms. Barnes, the victim said the remark was "cute," a comment that prompted the [Petitioner] to try to "headbutt" the victim. The victim said that when this failed, the [Petitioner] spat in the victim's face. The victim said that when he bowed his chest and tried to insert himself between the [Petitioner] and the females, the [Petitioner] hit him over the left eye with his fist. The blow caused a cut which was depicted in photographs introduced into evidence.

The [Petitioner] testified that the victim was the initial aggressor. He said that the victim chest-bumped the [Petitioner], backing him up a car length, before grabbing the [Petitioner's] throat with his hands. The [Petitioner] testified that he then swung at the victim in self-defense.

The victim's version of the event was generally corroborated through the testimonies of Ms. Barnes and a bystander and, apparently, a video recording of the event that was played for the trial court but was not included in the record on appeal.

State v. Daniel Adam Barnes, No. M2013-00202-CCA-R3-CD, 2013 WL 6243890, at *1 (Tenn. Crim. App. at Nashville, Dec. 3, 2013). Following a bench trial, the Petitioner was found guilty of domestic assault. The trial court imposed a sentence of eleven

months and twenty-nine days with all but ten days to be served on probation. On appeal, the Petitioner contended that the trial court erred by denying him the right to a separate sentencing hearing before imposing his sentence. This court affirmed the sentence. Id.

On January 29, 2014, the Petitioner filed a pro se petition for post-conviction relief, which was dismissed. Thereafter, on May 1, 2014, the Petitioner again filed a pro se petition for post-conviction relief. An attorney was appointed to represent the Petitioner, and two amended petitions were filed. In the petitions, the Petitioner alleged in pertinent part that his counsel was ineffective by failing to challenge the sufficiency of the evidence on direct appeal.

At the post-conviction hearing, the Petitioner testified that after he was convicted, he and counsel discussed an appeal. Counsel agreed to file the appeal. The Petitioner later learned that counsel had appealed only the sentence and not the conviction. After this court denied relief on direct appeal, the Petitioner talked with counsel about appealing further, but counsel took no additional action. The Petitioner felt that he was denied the right to appeal to the highest court. The Petitioner said that he "was more concerned with the conviction" than with the sentence, noting that his conviction prevented him from getting "Haz Mat endorsements" on his truck driver's license and from getting a hunting license so he could go hunting with his son. The Petitioner said that he was "innocent" and "would like for things to be right."

The Petitioner said that he called trial counsel's boss, the Public Defender. The Public Defender told the Petitioner that counsel should have appealed the Petitioner's conviction and "walked [him] through" how to file a post-conviction petition. The Public Defender "gave [the Petitioner] a bunch of codes and stuff that were on the Tennessee website," and the Petitioner printed forms from the website.

The Petitioner asked the post-conviction court to find that counsel was ineffective and grant him a delayed appeal of his conviction. The Petitioner asserted that the trial court's "reasoning for finding [him] guilty [was] just kind of off-the-wall."

Counsel testified that he began practicing law in 1983 and that he began working as an assistant public defender in 1986. Counsel noted that the trial court convicted the Petitioner upon the testimony of three witnesses who contradicted the Petitioner's testimony and a video of the incident. After the Petitioner was convicted, counsel advised him of his right to appeal his conviction and his sentence. Counsel thought that an appeal of the conviction would not be successful and might "have detracted from what potentially could have been a good issue on appeal." Counsel explained that in his experience, an appeal obtained "more favorable results if [he stuck] to an issue that [had] a legitimate basis rather than throwing everything up there and hoping something sticks." Counsel advised the Petitioner that if he wanted to appeal his conviction, "he could hire a

lawyer [who] would do anything he wanted to do, but that [counsel] felt the only issue that we might have a chance on was the sentencing and that's what [counsel] intended to appeal."

On cross-examination, counsel said that the trial court convicted the Petitioner because it found the State's witnesses to be more credible. Additionally, the trial court found that the video showed "people heading across the street before the actual altercation . . . occurred. That something happened to precipitate that assault." Counsel said that when he reviewed the evidence adduced at trial, he thought the Petitioner's conviction would be affirmed on appeal. Counsel said that he did not include the video in the record on appeal because he was not appealing the Petitioner's conviction. Additionally, he believed that "the less corroboration of the Judge's ruling [he] gave [the Court of Criminal Appeals,] the better off [he] thought [his] odds were on appeal."

Counsel recalled that after the Petitioner's sentence was affirmed by this court, the Petitioner "indicated his displeasure with what we had already done" and wanted to include a complaint about counsel's representation in his appeal to our supreme court. Counsel advised the Petitioner that our supreme court would decide only whether to review the ruling of this court and would not entertain a complaint about counsel. Counsel advised the Petitioner that he could raise a complaint about counsel in a petition for post-conviction relief. Counsel further advised the Petitioner that he could not represent the Petitioner in the post-conviction proceeding and that the Petitioner would have to file a pro se petition for post-conviction relief. Counsel later learned that the Public Defender supplied the Petitioner with a post-conviction form.

Upon questioning by the post-conviction court, counsel stated that he would have raised the sufficiency of the evidence on appeal if the Petitioner had insisted; however, counsel thought the best strategy to obtain relief on direct appeal was to challenge the sentence, which he believed was a stronger issue. After counsel explained his reasons for appealing only the sentence, the Petitioner did not insist on challenging the sufficiency of the evidence. Accordingly, counsel thought the Petitioner agreed with counsel's strategy for the appeal.

The Public Defender testified that the Petitioner called and told him that he was concerned because counsel did not challenge the Petitioner's conviction on direct appeal. The Public Defender told the Petitioner about post-conviction relief and explained how to initiate post-conviction proceedings. The Public Defender stated that he thought an attorney should appeal the sufficiency of the evidence if the client wanted the issue raised and opined that counsel erred by not appealing the conviction.

On cross-examination, the Public Defender acknowledged that as long as the Petitioner acquiesced to the appeal strategy, counsel "did everything appropriately."

The post-conviction court found that counsel was not deficient and that the Petitioner was not prejudiced; accordingly, the post-conviction court denied relief. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in

any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). The same test is used to determine the effectiveness of trial counsel and appellate counsel. See Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004).

Regarding the Petitioner's complaint that counsel was ineffective by failing to appeal the Petitioner's conviction, we note that this court has previously observed:

"[F]ailure to preserve and/or assert all arguable issues on appeal is not *per se* ineffective assistance of counsel, since the failure to do so may be a part of the counsel's strategy of defense. Counsel is not constitutionally required to argue every issue on appeal, or present issues chosen by his client. The determination of which issues to present on appeal is a matter of counsel's discretion."

State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). Moreover, "[a]ppellate counsel [is] not constitutionally required to raise every conceivable issue on appeal." Carpenter, 126 S.W.3d at 887. "[T]he determination of which issues to raise on appeal can be characterized as tactical or strategic[] choices, which . . . should not be 'second guessed' on appeal, subject, of course, to the requisite professional standards." Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

Our supreme court has set forth the following "non-exhaustive list" of factors which "is useful in determining whether an attorney on direct appeal performed reasonably competently in a case in which counsel has failed to raise an issue":

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?
6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7) What was appellate counsel's level of experience and

expertise?
8) Did the petitioner and appellate counsel meet and go over possible issues?
9) Is there evidence that counsel reviewed all the facts?
10) Were the omitted issues dealt with in other assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Carpenter, 126 S.W.3d at 888.

The post-conviction court accredited the testimony of counsel. Counsel testified that he evaluated the evidence adduced at trial and decided challenging the sufficiency of the evidence would not be successful on direct appeal. Counsel said that he thought his challenge regarding sentencing was stronger than a challenge to the sufficiency of the evidence. Counsel stated that in his experience, an appeal was more likely to yield beneficial results if he focused on the strongest issue. Counsel further testified that he advised the Petitioner that he was going to challenge only sentencing. Counsel thought the Petitioner agreed with the strategy. The post-conviction court reviewed the evidence adduced at trial and found that ample evidence existed to sustain the Petitioner's conviction, that counsel made a reasonable strategic decision not to appeal the sufficiency of the evidence, and that Petitioner failed to show that he was prejudiced by the decision. The Petitioner failed to show that an appeal of his conviction on the basis of insufficient evidence would have been successful or that he was prejudiced by trial counsel's failure to appeal the conviction. See Anthony Reid v. State, No. E2003-01953-CCA-R3-PC, 2004 WL 626714, at *13 (Tenn. Crim. App. at Knoxville, Mar. 29, 2004). Accordingly, we conclude that the post-conviction court did not err by denying post-conviction relief.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE