IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 23, 2017 Session

## JERRY PHILLIPS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Campbell County**
**No. 16292     Paul G. Summers, Judge**

---

### No. E2016-01083-CCA-R3-PC

---

The Petitioner, Jerry Phillips, appeals the denial of his request for post-conviction relief from his four convictions for aggravated sexual battery. The Petitioner contends that trial counsel's failure to object to the trial court's jury selection procedures in this case, which deviated from Tennessee Rule of Criminal Procedure 24, as recognized in State v. Frausto, 463 S.W.3d 469 (Tenn. 2015), amounted to ineffective assistance and that appellate counsel was likewise ineffective for failing to argue for plain error review of this issue on appeal. He further submits that the jury selection process violated his rights to due process of law, to a fair and impartial jury, and to intelligently exercise his peremptory challenges. After a thorough review of the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Wesley D. Stone, Knoxville, Tennessee, for the Appellant, Jerry Phillips.

Herbert H. Slatery III, Attorney General and Reporter; Lacy E. Wilber, Senior Counsel; M. Todd Ridley, Assistant Attorney General; Jared R. Effler, District Attorney General; and Thomas E. Barclay and Lindsey C. Cadle, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION
FACTUAL BACKGROUND

A Campbell County jury convicted the Petitioner of four counts of aggravated sexual battery following the ten-year-old victim's testimony about specific incidents of the Petitioner's inappropriately touching her. See Tenn. Code Ann. § 39-13-504. For a

detailed recitation of the facts underlying those offenses, refer to State v. Jerry Phillips, No. E2011-00674-CCA-R3-CD, 2012 WL 1143831, at *1-3 (Tenn. Crim. App. Apr. 5, 2012), perm. app. denied (Tenn. Aug. 15, 2012). The parties agreed to merge two of the convictions for sentencing purposes, and the trial court then sentenced the Petitioner as a Range II offender to consecutive terms of eighteen years for each conviction, for a total effective sentence of fifty-four years. Thereafter, the Petitioner's motion for new trial was denied, and this court, on appeal, affirmed the sufficiency of the evidence supporting the Petitioner's convictions. See id. *3-4.

Following his unsuccessful direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed. Thereafter, substitute counsel was ordered, and a second amended petition was filed on the Petitioner's behalf on July 27, 2015. In the second amended petition, the Petitioner claimed that he received ineffective assistance of counsel in the following ways: (1) trial counsel failed to introduce the "victim's completely different testimony provided during the preliminary hearing"; (2) trial counsel failed to present "the finding by the Tennessee Department of Children['s] Services . . . conclud[ing] that the allegations of abuse were unfounded"; (3) trial counsel failed to object to the jury selection process that deviated from Rule 24 of the Tennessee Rules of Criminal Procedure, as discussed in State v. Frausto, 463 S.W.3d 469 (Tenn. 2015), thereby denying him his "right to intelligently exercise his preemptory challenges," and more probably than not affected the jury's verdict or "prejudiced the judicial process"; (4) trial counsel failed to object to the State's untimely notice to seek enhanced punishment; (5) trial counsel incorrectly stipulated to the Petitioner's sentencing range classification; and (6) appellate counsel failed to raise the aforementioned errors in the Petitioner's motion for new trial and on appeal. The Petitioner also made a broad allegation that he was denied due process and a fundamentally fair trial. Thereafter, a hearing was held on the petition.

On appeal, the Petitioner has only presented a claim of ineffective assistance of counsel, both trial and appellate, as it relates to the jury selection process. We will limit our recount of the facts from the post-conviction hearing accordingly.

The trial judge who presided over the Petitioner's trial in November 2009 testified. The trial judge described the jury selection procedure in his courtroom at that time as follows: (1) initially, a panel of eighteen prospective jurors would be seated for voir dire; (2) after questioning, each side could challenge for cause or use any of their ten preemptory challenges to excuse jurors from this panel; (3) the venire members that remained where instructed to wait in the jury room while another panel of eighteen prospective venire members were seated and questioned; (4) the parties could then challenge for cause a juror from this new panel of eighteen or use any of their remaining

preemptory challenges to excuse jurors from this panel or to backstrike[1] any of the jurors in the waiting room; (5) this process continued until at least the desired number of jurors had been reached; and (6) if more than that desired number remained, the trial judge would then randomly excuse jurors by pulling names out of a box until left with only the desired number of prospective jurors.

According to the trial judge, this process was "the ordinary and custom procedure" for jury selection, being used in all of the five counties in his district at the time the Petitioner's case was tried. He thought the process was efficient because it allowed for "get[ting] any type of jury in two rounds[.]" The trial judge testified that he utilized this procedure for "a number of years" until the Tennessee Supreme Court's decision in <u>Frausto</u>, and then he immediately ceased using this method. The trial judge testified that he did not recall any objection by the defense bar to this process until the <u>Frausto</u> case.

Trial counsel testified that he was employed with the Public Defender's Office for the Eighth Judicial District when he worked on the Petitioner's case in November 2009. Trial counsel was licensed to practice law in 1974, and his "extensive experience" since that time included working in private practice for "a few months," before serving as a Campbell County General Sessions Court Judge for fourteen years, and then being employed with the public defender's office for twenty-two years. For all intents and purposes, he was retired at the time of the post-conviction hearing.

Trial counsel agreed that Rule 24 was not complied with in this case. Furthermore, he confirmed that he did not object to the jury selection process in the Petitioner's case, reasoning, "I've tried many cases before [the trial judge in the Petitioner's case], it's been that same procedure. I've never objected to it. I didn't object in this case. If I had a trial where he's [d]oing it the same way, I wouldn't object today." Trial counsel opined, "If that's bad, that's bad. If it's not, it's not."

Appellate counsel testified that he had practiced law for twenty years, mostly in the area of criminal defense. Although he had significant trial experience, appellate counsel had handled only two appeals, which included the Petitioner's.

Appellate counsel confirmed that he filed the Petitioner's motion for new trial, raising therein only a challenge to the sufficiency of the evidence. Appellate counsel stated his understanding that failing to raise a contemporaneous objection at trial waived an issue and that failing to raise an issue in the motion for new trial waived that issue on appeal. However, he also knew that these issues could be reviewed under the plain error doctrine. According to trial counsel, he and the Petitioner discussed "some issues that

---

[1] "Backstriking" is the term for the party's exercise of a peremptory challenge to strike a prospective juror after initially accepting the juror.

possibly could have been . . . used in a direct appeal," but ultimately, they both "felt that they were . . . all post-conviction issues" instead.

Appellate counsel was asked why he did not raise the trial court's deviation from Rule 24 as an issue in the Petitioner's motion for new trial or on direct appeal. He replied,

> I'll be perfectly honest, because I don't think anybody here thought it was an issue then. I mean, we were doing it that way and at—at that time, it wasn't something, I don't think, you can p[ro]spectively look at people and say, okay, we should have known this. Maybe we should have, and if we should have, I'll certainly take any criticism that's due[.]

Appellate counsel also recalled trying a second degree murder case in the Eighth Judicial District during this same time period and picking the jury this same way.

The post-conviction court thereafter denied the Petitioner relief in an extensive written order filed on May 25, 2016, concluding therein that the Petitioner had failed to establish his claims of ineffective assistance of counsel. This timely appeal followed.

## ANALYSIS

On appeal, the Petitioner continues to rely on State v. Frausto, 463 S.W.3d 469, and argues that "[t]he post-conviction erred when it concluded that [the Petitioner] waived his right to the effective assistance of trial counsel who permitted a substantial deviation from the prescribed jury selection procedures that resulted in prejudice to the judicial process." Specifically, he claims that he received ineffective assistance of counsel when trial counsel did not object to the improper jury selection process and that the trial court's deviation from Rule 24 denied him due process of law, his right to a fair and impartial jury, and his right to intelligently exercise his preemptory challenges. According to the Petitioner, this method of jury selection caused prejudice to the judicial process, which, he asserts was all that was required to show, and did not have to prove that the deviations more probably than not affected the verdict.

Additionally, he asserts that appellate counsel was ineffective for failing to raise the trial court's deviation from Rule 24 as an issue on direct appeal.[2] According to the

---

[2] Although the Petitioner states in his brief that appellate counsel was ineffective for "admittedly defer[ing] and waiv[ing] all appellate issues to the post-conviction proceeding[,]" he does not mention or discuss any additional issues that appellate counsel failed to raise on appeal besides the trial court's jury selection process. Accordingly, any additional issues in that regard are considered waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also State v. Dellinger, 79 S.W.3d

-4-

Petitioner, he would have been entitled to plain error relief if appellate counsel had challenged the trial court's method of jury selection on appeal.

The State responds that neither trial counsel nor appellate counsel was deficient by not raising "an issue of a common practice in their county in jury selection." The State notes that this case is distinguishable on its facts from Frausto because defense counsel in that case was not familiar with the trial court's method of jury selection. The State continues, in contrast to Frausto, "defense counsel in the [P]etitioner's case knew about the jury selection procedure, he was not confused about it, and there has been no allegation that a juror was seated due to [trial counsel's] confusion about the selection process." Furthermore, the State asserts that the Petitioner has failed to establish prejudice resulting from any deficiency, submitting that this is not an instance when prejudice is presumed in a post-conviction proceeding. Furthermore, the State notes that, even in the direct appeal context, automatic reversal is not required simply because there is a violation of Rule 24 and the Petitioner still must show that the deviation more probably than not affected the verdict or prejudiced the judicial process.

Additionally, that State replies that, for these same reasons, appellate counsel was not ineffective for failing to raise the issue on appeal. Moreover, the State submits that the Petitioner would not have been entitled to plain error relief (1) because no clear and unequivocal rule of law had been breached, the Frausto case not being decided until after the Petitioner's trial, and (2) because consideration of the error was not necessary to do substantial justice given that trial counsel understood how the jury selection procedures worked in the Eighth Judicial District.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

458, 488 (Tenn. 2002) (refusing to address issues raised in the trial court but abandoned on appeal).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).

The same principles apply in determining the effectiveness of both trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must present facts that establish (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal; and (2) absent the deficient performance, a reasonable probability existed that the Petitioner's appeal would have been successful before the state's highest court. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparico v. Artuz, 269 F.3d 78, 25 (2d Cir. 2001). In examining whether counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of the issue. Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004). "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." Id. Additionally, when an omitted issue is without merit, a petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. Id. at 887-88.

Counsel is responsible for determining the issues to present on appeal. State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). There is no constitutional requirement that every conceivable issue be raised on appeal. Campbell, 904 S.W.2d at 597. The determination of which issues to raise is a tactical or strategic choice. Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

There is no dispute in this case that the trial court followed the same procedure as utilized in the Frausto case and that the jury selection process deviated from Rule 24.[3] However, the post-conviction court noted that Frausto was decided on April 1, 2015, and that the Petitioner's application for permission to appeal was denied by our supreme court

---

[3] Rule 24 of the Tennessee Rules of Criminal Procedure provides, in pertinent part, as follows:

> (d) Exercising Peremptory Challenge. After the court conducts its initial examination and seats a tentative group of jurors not excluded for cause, the following procedure shall be followed until a full jury has been selected from those jurors and accepted by counsel:
> (1) At each round of peremptory challenges, counsel shall submit simultaneously to the court either a blank sheet of paper or a sheet of paper challenging one or more jurors in the group of the first twelve . . . jurors who have been seated. Neither party shall make known the fact that the party has not challenged a juror.
> (2) Replacement jurors will be seated in the panel of twelve . . . in the order of their selection.
> (3) If necessary, additional replacement jurors will be examined for cause and, after passed, counsel will again submit simultaneously, and in writing, the name of any juror in the group of twelve . . . that counsel elects to challenge peremptorily. Peremptory challenges may be directed to any member of the jury; counsel are not limited to using such challenges against replacement jurors.
> (4) Alternate jurors are selected in the same manner . . . .
> (5) The trial judge shall keep a list of those challenged. If the same juror is challenged by both parties, each party is charged with the challenge. The trial judge shall not disclose to any juror the identity of the party challenging the juror.

in 2012. The post-conviction court then held that trial counsel was not ineffective for failing to object the jury selection procedures and that the holding in Frausto did not entitle the Petitioner to post-conviction relief, reasoning as follows:

> In Frausto, the defense counsel objected because he had never used this method before coming to that district; did not know how it worked; thought he had to use all of his peremptory challenges; and did not know what jurors would later replace challenged jurors. The "non-Rule 24" selection method of Union County in Frausto confused counsel. He claimed error and prejudice, and he also pursued it on appeal. In [this case], counsel was a seasoned public defender who knew all about the "non-Rule 24" process and did not claim error or prejudice. He was used to the Campbell County methods.
>
> The Frausto case held that deviation from prescribed jury selection procedures are non-constitutional errors subject to harmless error analysis. Such errors require reversal only if a defendant establishes either the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). [The] Petitioner . . . does not meet the test.
>
> As stated in Frausto, this issue is not of constitutional dimension and did not result in a constitutional violation of either the Tennessee or federal constitutions. Therefore, the issue is inapplicable to post-conviction relief.

The post-conviction further concluded, "Because this [c]ourt finds that trial counsel was not ineffective, it follows that appellate counsel was not ineffective for not raising the same issues."

First, we agree with the post-conviction court that this issue is not of constitutional dimension and did not result in a violation of either the Tennessee or federal constitutions. The Petitioner's stand-alone constitutional argument is murky at best. He makes the following statements in this regard: "he was denied due process when the trial court's deviation denied him his right to a fair and impartial jury." (internal quotations marks and alteration omitted); and "the trial court denied him both his right to a fair and impartial jury and his right to intelligently exercise his peremptory challenges when it deviated, substantially or otherwise, from the jury selection requirements." (internal quotations marks and alteration omitted). Later in his brief, he acknowledges that "frustrating the ability to intelligently exercise peremptory challenges is not necessarily a constitutional concern[,]" citing to the holding in Frausto, 463 S.W.3d at 483.

Frausto is clear and unambiguous that no issue of constitutional proportions is involved:

> The federal and state constitutions guarantee a criminal defendant the right to a fair and impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; see also [State v.] Sexton, 368 S.W.3d [371,] 390 [(Tenn. 2012)]. Rules prescribing jury selection procedures are intended to ensure "the accused a fair and impartial jury chosen from a fair cross-section of the community." [State v.] Coleman, 865 S.W.2d [455,] 458 [(Tenn. 1993)]. Indeed, the overarching goal of voir dire is to ensure that jurors are competent, unbiased, and impartial. State v. Harris, 839 S.W.2d 54, 65 (Tenn. 1992). Peremptory challenges are one important means of achieving this goal. State v. Howell, 868 S.W.2d 238, 248 (Tenn. 1993) (citing Ross v. Oklahoma, 487 U.S. 81, 88 (1988)). Nevertheless, the right to exercise peremptory challenges "is not of constitutional dimension." Id. at 248 (citing Ross, 487 U.S. at 88); see also Rivera v. Illinois, 556 U.S. 148, 152 (2009) ("This Court has long recognized that peremptory challenges are not of federal constitutional dimension." (internal quotation marks omitted)).

Frausto, 463 S.W.3d at 483. Accordingly, post-conviction relief is unavailable on any stand-alone claim regarding the trial court's jury selection process. See Tenn. Code Ann. § 40-30-103.

Next, we concur with the post-conviction court that this case is factually distinguishable from Frausto. In Frausto, our supreme court determined that the defendant had established that the deviations from Rule 24(d) resulted in prejudice to the judicial process. 463 S.W.3d at 486. Our supreme court detailed the following facts reflecting prejudice to the Frausto defendant:

> Although defense counsel at trial was a seasoned lawyer with much experience prosecuting and defending those charged with crimes in Tennessee, he expressed confusion and uncertainty when the trial court utilized a procedure not countenanced by Rule 24(d). For example, when the trial court announced that it would "begin the trial with [thirteen] jurors," the record indicates that defense counsel understood this remark to mean that he was required to exercise most of his peremptory challenges in the first round in order to have a second round of peremptory challenges. With this understanding, the defendant exercised seven of his peremptory challenges against the first panel of eighteen. Then, instead of calling additional prospective jurors to replace those who were excused, the trial court sent the eleven remaining prospective jurors to the jury room, brought in another panel of eighteen, and started the voir dire process again. During

this second voir dire, the defendant used his last two peremptory challenges, and at the end of this process, twenty-three prospective jurors remained. The trial court then randomly selected ten prospective jurors to excuse from service and seated the remaining thirteen to hear the defendant's case. Defense counsel objected repeatedly but was unable to call the trial judge's attention to Rule 24(d), despite the trial judge's invitation for defense counsel to produce "some law" showing that the method was "wrong."

Id.

In contrast, trial counsel for the Petitioner was a veteran lawyer that practiced exclusively within the Eighth Judicial District at the time of the Petitioner's November 2009 trial. Trial counsel agreed that Rule 24 was not complied with in this case based upon the subsequently-issued decision in Frausto, but as the post-conviction court noted, that 2015 decision had not been issued at the time of the Petitioner's trial. Moreover, trial counsel affirmed, "I've tried many cases before [the trial judge in the Petitioner's case], it's been that same procedure. I've never objected to it. I didn't object in this case. If I had a trial where he's [d]oing it the same way, I wouldn't object today."

The direct appeal record reflects that an initial panel of eighteen jurors was called. From this initial panel, nine potential jurors were discharged by the parties through the use of peremptory challenges, and nine were sent to the jury room to wait. A second group of eighteen was impaneled. From this second panel, one venire member was excused for cause due to work constraints. Prior to exercising their peremptory challenges this time, the parties were reminded they could also backstrike any of the potential jurors in the waiting room. Peremptory challenges were then submitted: one member from the waiting room was released, and six from the second panel were excused. The court then discharged additional members from jury service by drawing names from a box, and ultimately, the number of potential jurors was reduced to thirteen.

It is clear that trial counsel was aware of the trial judge's jury selection method and was able to effectively conduct voir dire. The parties were advised that they could backstrike any jurors remaining in the waiting room, and in fact, one party did backstrike a juror from the first panel. We cannot conclude that trial counsel's representation fell below an objective standard of reasonableness when he failed to object to the jury selection process. See, e.g., State v. Gary Bohannon, No. W2014-01368-CCA-R3-PC, 2015 WL 2400422, at *6 (Tenn. Crim. App. May 19, 2015) (holding that trial counsel's failure to object to the trial court's "common practice" of informing the jury of the expected length of the trial was neither deficient nor prejudicial), perm. app. denied (Tenn. Jan. 14, 2016).

-10-

Likewise, we do not find the Petitioner's arguments regarding prejudice persuasive. The Petitioner claims that there was prejudice to the judicial process by the trial court's deviation from Rule 24 but does not extrapolate any further. The Frausto court was clear that reversal is not automatic in cases such as these. 463 S.W.3d at 484 (citing State v. Rodriguez, 254 S.W.3d 361, 372 (Tenn. 2008)). The court stated, "[D]efendants seeking relief based on deviations from prescribed jury selection procedures [are required] to establish prejudice by showing either that the deviations more probably than not affected the verdict or that the deviations prejudiced the judicial process."[4] Frausto, 463 S.W.3d at 486. Because trial counsel was experienced with the jury selection process in the Eighth Judicial District, was not confused by it, was advised that he could backstrike any juror in the waiting room, and a party did indeed exercise a backstrike, the Petitioner cannot show any prejudice to the judicial process. See, e.g., State v. Zachary Gale Rattler, No. E2015-01570-CCA-R3-CD, 2016 WL 6111645, at *8-9 (Tenn. Crim. App. Oct. 19, 2016), perm. app. denied (Tenn. Mar. 8, 2017) (analyzing Frausto and holding that "any deviation from Rule 24 was, at most, minor, and there [was] no proof of a 'substantial and flagrant' violation of the rule").

Regarding any ineffectiveness of appellate counsel, we again agree with the post-conviction court because this issue with the jury selection process lacks any merit. Because the Petitioner cannot show any prejudice from the trial court's deviation from Rule 24 for the reasons detailed above, the plain error doctrine would afford him no relief. See State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Consideration of the error would not be necessary to do substantial justice. Accordingly, the Petitioner has likewise failed to establish an ineffective assistance of appellate counsel for failing to raise this issue on appeal.

CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[4] The Petitioner makes no argument that the deviation from Rule 24 more probably than not affected the verdict, and we see no grounds to make a case in that regard.

-11-